[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 293.]

CINCINNATI BAR ASSOCIATION ET AL. *v.* BAAS.

[Cite as *Cincinnati Bar Assn. v. Baas*, 1997-Ohio-389.]

*Attorneys at law—Misconduct—Two-year suspension with last eighteen months of suspension stayed—Neglect of an entrusted legal matter—Failing to carry out contract of employment—Failing to segregate funds—Failing to refund unearned advance fees promptly after withdrawing from employment— Failing to promptly return funds client is entitled to receive—Withdrawing from representation without taking steps to ensure client is not prejudiced— Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Knowingly making a false statement of law or fact while representing client—Abuse of alcohol—Failing to register with Supreme Court—Rendering legal services while not in active status as an attorney—Failing to comply with legal education requirements.*

(No. 96-2481—Submitted May 6, 1997—Decided July 30, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, Nos. 95-90 and 96-12.

————————————

{¶ 1} On December 4, 1995, relator Cincinnati Bar Association filed a complaint in case No. 95-90 charging that respondent, Patricia A. Baas of Cincinnati, Ohio, Attorney Registration No. 0020876, repeatedly disregarded her obligations as an attorney and thus violated Disciplinary Rules on five separate occasions. On February 5, 1996, relator Office of Disciplinary Counsel of the Supreme Court filed in case No. 96-12 another complaint charging that respondent violated additional Disciplinary Rules. The complaints were consolidated on March 12, 1996.

**{¶ 2}** On June 19, 1996, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard testimony and received stipulations of the parties. The panel found that in October 1991, respondent, having been retained by the heirs of Emma P. Shupp, filed an application to administer Shupp's estate. Respondent advised the heirs that the administration of the estate was a simple matter which would be closed within a year. But respondent took no action in the case from early 1993 through December 1, 1995 despite repeated telephone calls by the heirs and respondent's promises to take action. The probate court issued delinquency notices to respondent, once in February 1994 and later in July 1995, because respondent failed to file a required partial accounting. On May 10, 1996, the estate still remained open.

**{¶ 3}** The panel further found that in May 1993, Edgar Miller engaged respondent to probate the estate of his deceased wife. Respondent deposited Miller's $245 retainer check in her commercial checking account. The wife's only probate asset was her one-half interest in the real estate she owned with Miller. From June 1993 until July 1994, respondent made no filings until the probate court issued a show cause order. From June 1993 through January 1995, respondent failed to return Miller's phone calls or replied to them with promises of action that never was taken. Only after relator served respondent with a grievance did respondent close the estate in April and May 1995.

**{¶ 4}** The panel also found that in March 1994, respondent received $500 from Dana Kondovska, who had a limited ability to speak English, to represent her in the probate of her father's estate. Respondent deposited the money in a commercial checking account. During the remainder of 1994, despite numerous requests, respondent failed to answer calls from friends representing Kondovska inquiring about the case and failed to communicate with the attorney for the estate. Respondent also did not respond to Kondovska's request for a refund of the $500 until finally she returned that amount in March 1995.

**{¶ 5}** The panel found that in October 1994, respondent received a retainer of $1,500 from Enrico W. Lanza to represent him in a divorce action brought by his wife. After respondent deposited the retainer in a commercial checking account, she failed to make a court filing as promised to the wife's counsel. As a result of respondent's failure to act, a support order was entered requiring Lanza to pay $1,300 a month. Later testimony indicated this sum was clearly an excessive amount, and thus Lanza suffered losses he would not otherwise have suffered. Respondent failed to answer Lanza's numerous inquiries about the support order and failed to respond to Lanza's demand for a return of the $1,500 retainer until March 1995.

**{¶ 6}** The panel also found that in February 1994, Jennifer S. Barlow gave respondent a $750 advance deposit for fees and expenses to represent her in a change of custody matter. Respondent deposited the funds in a commercial checking account and then failed for three months to communicate with Barlow or schedule required appointments with a child psychologist. Respondent told Barlow that she had filed a motion on this matter in domestic relations court in August 1994 and that a hearing was set for October 20, 1994. In fact, respondent had made no such filing, and the court had not set a hearing. In October 1994, Barlow orally demanded a return of her advance payment and in January 1995 sent respondent a written demand. As late as June 1995, Barlow had still not received a refund of the retainer.

**{¶ 7}** Finally, the panel found that in February 1993, respondent undertook to represent Frank A. Gelhot as executor of the estate of Marie C. Moorman. After opening the estate in March 1993, respondent failed to proceed with the administration for one year and was ordered to appear before the probate court in April 1994, to show cause why accountings had not been filed. In December 1994, respondent had Gelhot execute estate checks for his executor's compensation and for her attorney fees, which attorney fees, though yet unapproved by the court, were

deposited in a commercial checking account. The respondent failed to file a final account, and the probate court issued notices for both Gelhot and respondent to appear on August 16, 1995. Respondent did not appear. Later, in October 1995, the probate court disallowed a substantial portion of the executor's compensation because of respondent's miscalculations. Respondent failed to file the Ohio estate tax return for the estate and did not file the final account in the case until November 29, 1995.

{¶ 8} The panel also found that respondent failed to properly register her current status as an attorney with the Supreme Court of Ohio and failed to report her continuing legal education hours to the Supreme Court.

{¶ 9} In mitigation, the panel found that respondent admitted that she was an alcoholic and that as a result of her alcoholism she failed to represent her clients and caused injury to them. At the time of the hearing, she was attending Alcoholics Anonymous meetings, was regularly visiting a therapist, and was about to enter into a contract with the Ohio Lawyers Assistance Program ("OLAP").

{¶ 10} The panel concluded that with respect to clients Shupp, Miller, Kondovska, Lanza, Barlow, and Gelhot, respondent violated DR 6-101(A)(3) (neglecting an entrusted legal matter), and with respect to Kondovska, Lanza, Barlow, and Gelhot, respondent violated DR 7-101(A)(2) (failing to carry out a contract of employment), 9-102(A)(2) (funds of a client shall be deposited in a separate account and not be commingled except with funds that potentially belong to the attorney), 9-102(B)(3) (a lawyer shall maintain complete records of all client funds and render appropriate accounts to the client), and R.C. 4705.09 (an attorney shall maintain an IOLTA (interest on lawyer's trust account) and deposit therein client funds which are nominal or are to be held for a short time).

{¶ 11} The panel further concluded that with respect to clients Kondovska, Lanza, and Barlow, respondent violated DR 2-110(A)(3) (failure to refund unearned advance fees promptly after withdrawing from employment) and 9-

102(B)(4) (promptly returning to the client when requested funds the client is entitled to receive). Additionally, with respect to Lanza, the panel found a violation of 2-110(A)(2) (withdrawing from representation without taking steps to ensure that the client is not prejudiced) and 9-102(B)(4) (promptly returning to client when requested properties the client is entitled to receive). Respondent's misrepresentations to Barlow and Gelhot, said the panel, violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) and 7-102(A)(5) (knowingly making a false statement of law or fact while representing a client).

{¶ 12} The board later concluded that respondent's abuse of alcohol violated DR 1-102(A)(6) (engaging in conduct that adversely reflects upon an attorney's fitness to practice law), Gov.Bar R. VI(1) (failing to register with the Supreme Court as required), VII(2)(A) (rendering legal services while not in active status as an attorney), and X (failing to comply with continuing legal education requirements).

{¶ 13} The panel recommended that respondent be suspended for two years with the entire term of suspension stayed on the condition that the respondent be on probation. As terms of that probation, the panel recommended that respondent (1) establish an IOLTA account, (2) complete all necessary continuing legal education requirements and be currently registered, (3) abstain from alcohol and be subject to random testing by medical personnel, as selected by and reporting to relator Cincinnati Bar Association to verify such abstinence, (4) regularly attend alcohol counseling sessions, regularly attend AA/NA meetings, and enroll in OLAP, and (5) within sixty days prior to the end of her first year of probation, and at the termination of her second year of probation, submit to an examination by a physician chosen by relator to determine whether she is capable of practicing law. As a further consideration, the panel recommended that the Cincinnati Bar Association regularly monitor respondent's practice of law.

**{¶ 14}** The board adopted the findings, conclusions, and, except for modification of condition (5) above, the recommendations of the panel.

_____

*Richard H. Johnson* and *Don R. Gardner,* for relator Cincinnati Bar Association.

*Geoffrey Stern*, Disciplinary Counsel, and *Sally Ann Steuk*, Assistant Disciplinary Counsel, for relator Office of Disciplinary Counsel.

*John H. Burlew,* for respondent.

_____

*Per Curiam.*

**{¶ 15}** We adopt the findings and conclusions of the board, but not its recommendations. Respondent's infraction deserves a stronger penalty. An attorney's neglect of legal matters warranted a one-year suspension with six months stayed in *Cleveland Bar Assn. v. Droe* (1996), 77 Ohio St.3d 89, 671 N.E.2d 230, and an indefinite suspension in *Akron Bar Assn. v. Snyder* (1997), 78 Ohio St.3d 57, 676 N.E.2d 504. Failure to segregate funds warranted a one-year suspension in *Erie-Huron Counties Joint Certified Grievance Commt. v. Miles* (1996), 76 Ohio St.3d 574, 669 N.E.2d 831. In *Toledo Bar Assn. v. Christensen* (1996), 77 Ohio St.3d 71, 671 N.E.2d 30, we indefinitely suspended an attorney who failed to comply with the registration and continuing legal education requirements and failed to cooperate in the disciplinary investigation.

**{¶ 16}** In this case, while recognizing respondent's efforts to rehabilitate herself as an attorney, we believe that the pattern of neglect respondent has demonstrated justifies her removal from the practice of law for a period of time. Accordingly, we hereby suspend respondent from the practice of law in Ohio for two years, but we stay the last eighteen months of the suspension. Respondent will remain on probation for the entire period of suspension and shall take immediate steps to complete all necessary continuing legal education requirements and

become currently registered as an attorney with the Supreme Court of Ohio. In addition, respondent shall abstain from alcohol and be subject to random testing by medical personnel selected by and reporting to relator, Cincinnati Bar Association, to verify such abstinence, regularly attend alcohol counseling sessions, regularly attend AA/NA meetings and enroll in OLAP, and within sixty days prior to the end of her first year of probation and at least sixty days prior to the termination of her probation, submit to an examination by a physician chosen by the Cincinnati Bar Association to determine whether she is capable of practicing law. If respondent has or receives client funds which are nominal or are to be held for a short time, respondent shall establish an IOLTA account. The Cincinnati Bar Association shall regularly monitor respondent's practice of law.

{¶ 17} Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

———————————

**COOK, J., dissenting.**

{¶ 18} I differ with the amount of time imposed as an actual suspension. In my view no less than a full year is warranted.

———————————